UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF<br>MACHINISTS AND AEROSPACE<br>WORKERS, DISTRICT LODGE 166<br>and LOCAL LODGE 2061, AFL-CIO,<br>    271 Taylor Avenue<br>    Cape Canaveral, FL 32920<br><br>                         *Plaintiffs*,<br>v.<br><br>MICHAEL GRIFFIN, Administrator, National<br>Aeronautics and Space Administration<br>    Office of the Administrator<br>    NASA Headquarters<br>    300 E Street, S.W.<br>    Washington DC  20546-0001,<br>                         *Defendant*. | Civil Action No. _____ |

**COMPLAINT**

Plaintiffs International Association of Machinists and Aerospace Workers, District Lodge 166 and Local Lodge 2061, AFL-CIO, file this original complaint against Defendant Michael Griffin, Administrator, National Aeronautics and Space Administration ("NASA"), in his official capacity, as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiffs seek to redress conduct by NASA that violates federal regulations adopted to implement and further the purposes of the Service Contract Act of 1965, 41 U.S.C. § 351 <u>et seq.</u> ("SCA"). United Space Alliance, LLC ("Space Alliance") is an employer that has a service contract with NASA which provides that the company will provide personnel and technical support functions for the agency's manned space launches at Kennedy Space Center. The

contract between NASA and Space Alliance is covered by the SCA. A principal purpose of the SCA is to prevent the erosion of wage and benefit standards of workers employed in the government contracting sector of the economy. The statute requires private government contractors like Space Alliance to pay their employees wages and benefits at levels prevailing in their locality for workers similarly employed. In turn, agencies such as NASA are obliged, under regulations adopted to make the SCA effective, to ensure that contractors that pay the prevailing wage are reimbursed or otherwise compensated for increases in prevailing wages that occur in the course of a contract performance.

2. The plaintiff labor organizations serve as the exclusive collective bargaining representative of a unit of certain hourly-rated employees of Space Alliance at Kennedy Space Center in Cape Canaveral, Florida. Plaintiffs and Space Alliance have negotiated a series of collective bargaining agreements since 1983 with respect to rates of pay, wages, hours and other conditions of employment of hourly-paid employees in various job classifications. In mid-2007, the plaintiff labor organizations (hereinafter, "the Union") and Space Alliance commenced negotiations for the purpose of executing a new agreement since the extant collective bargaining agreement would terminate on June 1, 2007.

3. United Launch Alliance, LLC ("Launch Alliance"), another service contractor at Kennedy Space Center, provides personnel and services to the Air Force for unmanned space launches. Launch Alliance pays its unit employees, who are also covered by a collective bargaining agreement, approximately three dollars per hour more than their counterparts at Space Alliance for performing essentially the same work. A critically important issue in the recent contract negotiations between the Union and Space Alliance was an increase in the hourly wage

rates of unit employees so as to achieve wage parity with unit employees of Launch Alliance.

4.  These negotiations failed to yield an agreement, and the cause of that failure was that NASA violated an obligation codified at 48 C.F.R. 22.101-1(b)(1)—and implicit in the structure of the SCA—to remain neutral in ongoing labor-management negotiations. NASA told Space Alliance that if it agreed to any increased labor costs in a new collective bargaining agreement with the Union, the agency would refuse to reimburse or otherwise treat as allowable the increased costs—a threat that, if carried out, would put NASA in violation of its regulatory obligations and undermine the purposes of the SCA. The applicable procurement regulations obligate federal agencies to reimburse or otherwise treat as allowable increased wage (and related) labor costs arrived at through arms-length collective bargaining, and NASA, by making statements to Space Alliance inconsistent with that obligation, acted contrary to law.

5.  The SCA regulatory scheme provides an exclusive mechanism through which a federal agency that believes that a collectively-bargained wage rate is too high can obtain relief from its otherwise applicable obligation to honor such rates in its pricing and reimbursement decisions. That mechanism is to initiate a wage variance proceeding before the U.S. Department of Labor ("DOL") under 41 U.S.C. § 353(c). Under this statutory provision, and various DOL implementing regulations, NASA can request a determination by the DOL as to whether negotiated wages and fringe benefits are substantially at a variance with those that prevail for services of a character similar in the locality[1], and NASA can also seek to establish that a collectively-bargained wage rate was not the product of genuine arms-length bargaining. Federal law provides no other procedure by which NASA may contest the negotiated wage rates of

---

[1] Where, as here, wage rates and benefits are collectively bargained, a finding of substantial variance would require such rates and benefits to substantially exceed a comparable mix of rates in the locality.

Space Alliance's employees, and the neutrality that the applicable federal statutes and regulations demand of the government with regard to ongoing labor-management negotiations and other disputes affirmatively prohibits an agency from trying to influence collective-bargained wage rates while labor and management are in the process of engaging in the arms-length bargaining that the SCA contemplates.

**Parties**

6. Plaintiff International Association of Machinists and Aerospace Workers, District Lodge 166, AFL-CIO ("District 166") is a labor organization engaged in representing or acting for employees in an industry affecting interstate commerce as defined in the Labor Management Relations Act, 29 U.S.C. §§ 142(1), (3), and §§ 152(5)-(7). District 166 is affiliated with International Association of Machinists and Aerospace Workers, AFL-CIO ("IAMAW"), an international labor organization based in Upper Marlboro, Maryland. District 166's principal office is located in Cape Canaveral, Florida. District Lodge 166 brings this civil action in its representative capacity on behalf of all bargaining unit employees of United Space Alliance, LLC ("Space Alliance") at John F. Kennedy Space Center in Florida ("Kennedy Space Center"). Space Alliance is an "employer" within the meaning of the Labor Management Relations Act, 29 U.S.C. § 152(2).

7. Plaintiff International Association of Machinists and Aerospace Workers, Local Lodge 2061 ("Local 2061"), is a labor organization engaged in representing or acting for employees in an industry affecting interstate commerce as defined in the Labor Management Relations Act, 29 U.S.C. §§ 142(1), (3), and §§ 152(5)-(7). Local 2061, which is affiliated with IAMAW and District 166, is located in Cape Canaveral, Florida. Local 2061 brings this action

in its representative capacity on behalf of all bargaining unit employees of Space Alliance at the Kennedy Space Center.

8.      Plaintiffs have brought this civil action against Defendant Michael Griffin ("Griffin") in his official capacity as Administrator of National Aeronautics and Space Administration ("NASA"), an agency of the United States government. Griffin's principal office is located in Washington, D.C.

## JURISDICTION AND STANDING

9.      The court has jurisdiction over this non-statutory review action by reason of 28 U.S.C. § 1331 and 5 U.S.C. § 702, in that plaintiffs seek to obtain declaratory and injunctive relief to redress actions by defendant that are contrary to law and outside the statutory authority of the agency he is charged with administering.

10.     Plaintiffs have standing because the wrongful actions complained of in this lawsuit have caused them harm, in that defendant's actions have interfered with the ability of plaintiffs to consummate a collective bargaining agreement with Space Alliance. Furthermore, but for defendant's actions, the employees whom plaintiffs represent would be protected by a contract providing them with higher wages and benefits—specifically, wages and benefits in parity with those employees performing substantially identical work for Launch Alliance.

## VENUE

11.     Venue is proper in this judicial district in accordance with 28 U.S.C. §1391(e) because NASA's principal office is located in the District of Columbia and defendant "resides" in the District of Columbia for purposes of actions taken by him in his official capacity.

## FACTS

12. NASA's mission is to seek scientific discovery through space exploration and aeronautics research. NASA Headquarters in Washington, D.C. provides overall guidance and direction to the agency under Griffin's leadership.

13. Kennedy Space Center, located in Brevard County, Florida, is home of NASA's space shuttle fleet – Endeavor, Atlantis and Discovery. Kennedy Space Center provides launch sites for the space shuttle and numerous launch vehicles delivering payloads into orbit. Space shuttle operations at Kennedy Space Center focus on maintaining each orbiter's health, and on meticulously preparing the vehicle, its external tank and solid rocket boosters for upcoming missions.

14. Space Alliance is a joint venture of The Boeing Co. and Lockheed Martin Corp. Space Alliance's headquarters are located in Houston, Texas. The company has more than 10,000 employees in Texas, Alabama and Florida.

15. Space Alliance has had a service contract with NASA under the SCA at all relevant times. The contract is designated *NAS9-20000 – Space Flight Operations Contract – United Space Alliance*. In accordance with the contract, Space Alliance provides services and mechanical and technical personnel for the agency's manned space launches at Kennedy Space Center.

16. Launch Alliance is a joint venture of The Boeing Co. and Lockheed Martin Corp. Launch Alliance has had a service contract with the Department of the Air Force under the SCA at all relevant times. In accordance with that contract, Launch Alliance provides services and mechanical and technical personnel for the agency's unmanned space launches at Kennedy Space Center. Launch Alliance also provides certain personnel and services for NASA at

Kennedy Space Center

17. District 166 and Local 2061 were at all relevant times, and are now, the exclusive collective bargaining representative of a unit of certain hourly-rated employees of Space Alliance who are assigned to the Kennedy Space Center pursuant to a letter of recognition dated November 15, 1983. Since that time the parties have negotiated a series of collective bargaining agreements with respect to rates of pay, wages, hours and other conditions of employment of hourly-paid employees in various job classifications.[2]

18. The most recent collective bargaining agreement between Space Alliance and plaintiffs was in effect from June 5, 2004 to June 1, 2007. In mid-2007, the Union and employer commenced negotiations for the purpose of executing a new agreement.

19. District 166 also represents a unit of hourly-rated employees of Launch Alliance. That company pays its unit employees approximately three dollars per hour more than their counterparts at Space Alliance for performing essentially the same work. For this reason, a critically important issue in the contract negotiations between plaintiffs and Space Alliance was an increase in the hourly wage rates of Space Alliance's bargaining unit employees.

20. Plaintiffs conducted negotiations with Space Alliance in an effort to obtain wage parity for unit employees of Space Alliance. Those efforts failed to result in a contract proposal

---

[2] Applicable job classifications include those of lead air conditioning mechanic, air conditioning mechanic, lead crane operator, crane operator, dispatcher/driver lead, driver/special, driver, lead electrician, electrician, lead electronic fab installer, electronic fab installer, lead electronic technician, electronic technician, lead elevator technician, elevator technician, lead facility service worker, facility service worker, lead heavy equipment mechanic, heavy equipment mechanic, helper, lead machinist, machinist, lead material equipment controller, material equipment controller, lead material expediter, material expediter, lead mechanic technician, mechanic technician, lead packer and crater, packer and crater, lead potter and molder, potter and molder, lead propellants/pneumatic mechanic, propellants/pneumatic mechanic, lead rigger, rigger, lead sheet metal worker, sheet metal worker, lead structural painter, structural painter, lead welder, and welder.

by Space Alliance acceptable to the bargaining unit members. Plaintiffs commenced a strike against Space Alliance on June 14, 2007. The Union established picket lines at various locations and the dispute has continued since that date. Space Alliance has persisted in its refusal to negotiate fair wages to its unit employees despite the prolonged work stoppage. Approximately 500 employees are on strike.

21. At all relevant times NASA has exerted direct pressure on Space Alliance that has distorted the collective bargaining process between the Union and Space Alliance. Instead of allowing Space Alliance and the Union to negotiate free of government interference and at arms length—the process that both the SCA regulatory scheme and the National Labor Relations Act contemplate and require—NASA has made statements that have exerted and continue to exert coercive pressure on Space Alliance to insist on wage rates below the level at which it would be willing to settle for in the absence of such coercive pressure. The agency's actions have therefore prolonged the labor dispute and prevented its resolution.

22. Samuel Haddad ("Haddad") was at all relevant times, and is now, NASA's Regional Labor Advisor at Kennedy Space Center. Johnny Walker ("Walker") was at all relevant times, and is now, Directing Business Representative of District 166.

23. On May 14, 2007, Haddad and Walker met and conferred at the Kennedy Space Center. Acting as an agent of defendant and representative of the agency, Haddad informed Walker that NASA had allocated a certain amount of money to Space Alliance for services rendered, and to be rendered, by the company through the termination of the space shuttle program. Haddad stated, not only that NASA would not increase that amount under any circumstances, but that NASA would not reimburse Space Alliance for any increase in

employees' wages or benefits that the employer may negotiate with plaintiffs, even though the SCA regulatory scheme mandates that NASA treat as allowable and reimbursable labor costs that are established by collective bargaining agreements freely negotiated at arms length and that are in accord with rates prevailing in the locality.

24.     This threat was inconsistent with NASA's obligation to remain neutral with regard to ongoing negotiations between labor and management.  It was also improper because the exclusive avenue through which an agency can seek to avoid an obligation to treat as reimbursable or allowable collectively bargained wages and benefits is a "wage variance" proceeding before the DOL instituted after negotiations have concluded and a collective bargaining agreement has been reached, and because the position that Haddad asserted on behalf of NASA with regard to NASA's threatened response to a prospective wage increase was a position that could not be justified under the applicable standards governing wage variances.

25.     NASA has continued to maintain the position expressed on behalf of defendant by Haddad.  NASA's threat has had a devastating impact on the contract negotiations between the Union and Space Alliance. Throughout the negotiations, Space Alliance's representatives made repeated references to "customer issues"—i.e., to NASA pressure—in explaining why the company was unable to accept the Union's economic proposals or to agree to the kind of wage increase, based on parity, that ordinarily would be accepted.

26.     On information and belief, there is a recurring pattern and practice of NASA and its agents of operating in contravention of the SCA regulatory scheme by obstructing efforts by service contractors to obtain lawful reimbursement or allowances for labor expenses.

## COUNT ONE: DECLARATORY AND INJUNCTIVE RELIEF—VIOLATION OF SERVICE CONTRACT ACT AND IMPLEMENTING REGULATIONS

27. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 to 26, inclusive, as though such allegations were set forth herein verbatim.

28. The Service Contract Act of 1965, 41 U.S.C. § 351 et seq., requires NASA to reimburse and otherwise treat as allowable labor costs resulting from wage rates established in service contractors' agreements freely negotiated at arms length, where such wage rates are not in substantial variance with rates prevailing in the locality. This mandate is made express through a series of regulations adopted to give effect to the SCA's purposes and objectives including, inter alia, 48 C.F.R. § 52.22-43 and 48 C.F.R. § 22.101-1(b)(1). 48 C.F.R. § 52.22-43 requires federal agencies entering into certain fixed price service contracts to compensate the service contractor for increases in wages and fringe benefits resulting from arms-length negotiations with labor organizations. And 48 C.F.R. § 22.101-1(b)(1) provides that federal agencies must remain impartial with regard to disputes between a labor organization and a contractor and must therefore refrain from interfering in such disputes. That requirement of government neutrality reflects the policy with regard to collective bargaining negotiation not only of the SCA, but also of the National Labor Relations Act.

29. By making the threats and engaging in the actions alleged above, NASA has violated its obligations under the SCA and its implementing regulations and has acted and continues to act in a manner that thwarts the purposes of the SCA and that directly harms the employees whom plaintiffs represent and whom the SCA was enacted to protect.

30. There is a case or controversy between the parties because plaintiffs have made it known to NASA that they believe NASA is acting contrary to law, and NASA has neither

committed to ceasing its wrongful conduct nor taken appropriate steps to repair the harm to the collective bargaining process that it has inflicted by telling Space Alliance that it will not reimburse the company for allowable wage increases or adjust the contract price in the event that such increases are lawfully negotiated at arms length.

31.     Accordingly, plaintiffs seek a declaration of the parties' rights and obligations. The court should declare (1) that defendant has violated the SCA and its implementing regulations by stating to the parties to the collective bargaining negotiations that it will not reimburse or treat as allowable any increased labor costs agreed to in collective bargaining; and (2) that a wage increase resulting in parity with a wage increase recently bargained at arms length covering employees doing work substantially identical to the work performed by Space Alliance employees would not provide grounds for the agency to obtain a wage variance pursuant to the regulations that implement 41 U.S.C. § 353(c). The latter declaration is necessary to undo the harm caused by NASA's violations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, International Association of Machinists and Aerospace Workers, District Lodge 166 and Local Lodge 2061, request that upon final trial, plaintiffs have judgment granting the following relief against NASA:

1.     The declaration set out in paragraph 31 above;

2.     An order enjoining defendant from making any future threats to Space Alliance while collective bargaining negotiations are ongoing, or to make any statements the substance of which is that the agency will not under any circumstances reimburse or treat as allowable any increases in labor costs.

11

3.  Attorney fees and court costs to the extent permitted by law;

4.  Such other and further relief, at law or in equity, to which plaintiffs may justly be entitled.

Dated: August 13, 2007

                                              Respectfully submitted,

                                              Leon Dayan (D.C. Bar No. 444144)
                                              Joshua B. Shiffrin (D.C. Bar No. 501008)
                                              BREDHOFF & KAISER P.L.L.C.
                                              805 Fifteenth Street NW
                                              Suite 1000
                                              Washington, DC 20008
                                              (202)842-2600

                                              *Counsel for Plaintiffs International Association of Machinists and Aerospace Workers, District Lodge 166 and Local Lodge 2061*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

International Association Of Machinists and Aerospace Workers, District Lodge 166 and Local Lodge 2061, AFL-CIO

**DEFENDANTS**

Michael Griffin, Administrator, National Aeronautics and Space Administration

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Leon Dayan (D.C. Bar No. 444144), Joshua B. Shiffrin (D.C. Bar No. 501008)
BREDHOFF & KAISER P.L.L.C.
805 Fifteenth Street NW
Suite 1000
Washington, DC 20008
(202)842-2600

Case: 1:07-cv-01459
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 8/13/2007
Description: Admn. Ahency Review

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- (●) 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**A. Antitrust**
- 410 Antitrust

**B. Personal Injury/Malpractice**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Medical Malpractice
- 365 Product Liability
- 368 Asbestos Product Liability

**(●) C. Administrative Agency Review**
- 151 Medicare Act

Social Security:
- 861 HIA ((1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g)
- 864 SSID Title XVI
- 865 RSI (405(g)

Other Statutes
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- [X] 890 Other Statutory Actions (If Administrative Agency is Involved)

**D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**E. General Civil (Other)** OR **F. Pro Se General Civil**

Real Property
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent, Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

Personal Property
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

Bankruptcy
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

Prisoner Petitions
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

Property Rights
- 820 Copyrights
- 830 Patent
- 840 Trademark

Federal Tax Suits
- 870 Taxes (US plaintiff or defendant
- 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- 610 Agriculture
- 620 Other Food & Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 RR & Truck
- 650 Airline Regs
- 660 Occupational Safety/Health
- 690 Other

Other Statutes
- 400 State Reapportionment
- 430 Banks & Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation

- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Satellite TV
- 810 Selective Service
- 850 Securities/Commodities/Exchange
- 875 Customer Challenge 12 USC 3410
- 900 Appeal of fee determination under equal access to Justice
- 950 Constitutionality of State Statutes
- 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Declaratory and injunctive relief sought for NASA's violation of the Service Contract Act, 41 U.S.C. 351 et seq and its implementing regulations

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐  DEMAND $ 0  Check YES only if demanded in complaint
JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 8/13/07    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.