UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INT'L ASSOC. OF MACHINISTS AND ) <br> AEROSPACE WORKERS, DISTRICT LODGE ) <br> 166 and AFL-CIO, LOCAL LODGE 2061 ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MICHAEL GRIFFIN, Administrator, National ) <br> Aeronautics and Space Administration ) <br> ) <br> Defendant. ) <br> ) | No. 1:07cv1459 (CKK) |

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

Michael Griffin, Administrator, National Aeronautics and Space Administration ("Defendant"), through undersigned counsel, respectfully move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's complaint in its entirety. In support of this motion, Defendant respectfully refers the Court to the accompanying memorandum.

Dated: November 16, 2007        Respectfully submitted,

                                _____/s/_____
                                JEFFREY A. TAYLOR, D.C. BAR # 498610
                                United States Attorney

                                _____/s/_____
                                RUDOLPH CONTRERAS, D.C. BAR #434122
                                Assistant United States Attorney

                                _____/s/_____
                                KENNETH ADEBONOJO
                                Assistant United States Attorney
                                555 Fourth St., N.W.
                                Washington, D.C. 20530
                                Phone: (202) 514-7157
                                Fax: (202) 514-8780

kenneth.adebonojo@usdoj.gov

**Of Counsel:**
Donald H. Schiller, Esq.
Assistant Chief Counsel
NASA Kennedy Space Center

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INT'L ASSOC. OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 166 and AFL-CIO, LOCAL LODGE 2061<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL GRIFFIN, Administrator, National Aeronautics and Space Administration<br><br>Defendant. | No. 1:07cv1459 (CKK) |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Michael Griffin, Administrator, National Aeronautics and Space Administration ("Defendant"), through undersigned counsel, respectfully moves, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), to dismiss Plaintiffs' complaint in its entirety. In support of this motion, Defendant respectfully refers the Court to the accompanying memorandum. Dismissal is proper here because Plaintiffs' complaint falls woefully short of what is required to state a claim.

### BACKGROUND

This action arises out of a labor dispute between United Space Alliance, L.L.C. ("Space Alliance"), a Boeing and Lockheed Martin joint venture that provides technical and mechanical support for manned space launches and some of its employees represented by the International Association of Machinists and Aerospace Workers, District 166 and Local 2061 ("Plaintiffs").[1] Plaintiffs allege that the National Aeronautics and Space Administration ("Defendant") interfered in negotiations between Plaintiffs and Space Alliance in violation of the Services Contract Act

---

[1] As of November 5, 2007, the labor dispute between Space Alliance and its employees was resolved.

("SCA"). Space Alliance's contract with Defendant is under the Space Program Operations Contract, which is governed by the SCA.

Plaintiffs have been the exclusive bargaining representative with respect to pay, wages, hours and other conditions of employment for certain Space Alliance employees since 1983. *Compl.* at ¶17. The most recent collective bargaining agreement between Space Alliance and Plaintiffs' client was in effect from June 5, 2004 until June 1, 2007. *Id.* at ¶18. Plaintiffs also represent employees of United Launch Alliance ("Launch Alliance") another joint venture with a contract with the United States Air Force. *Id.* ¶¶3, 19. Apparently, Launch Alliance employees make approximately $3/hour more than their Space Alliance colleagues for doing essentially the same work. *Id.* Plaintiffs allege that efforts to obtain wage parity for Space Alliance employees failed resulting in a strike by Space Alliance employees that commenced on June 14, 2007. *Id.* at ¶20.

Plaintiffs allege that NASA's "direct pressure on Space Alliance []has distorted the collective bargaining process" between it and Space Alliance. *Id.* at 21. They allege that "NASA has made statements that have exerted and continue to exert coercive pressure on Space Alliance to insist on wage rates" below market. *Id.* The gravamen of Plaintiffs' complaint is that, on May 14, 2007, Samuel Haddad, a NASA regional labor advisor, met informally with one of Plaintiffs' representatives, Walker, at Fish Lips Bar in Port Canaveral and informed Walker that NASA will not increase the amount allocated to Space Alliance until the completion of the shuttle program and that Space Alliance will not be reimbursed for any increase in labor costs. *Id.* at ¶24. Plaintiffs allege that Haddad's statements constituted a violation of the Service Contract Act, 41 U.S.C. 351, *et* a seq., ("SCA") requirement that NASA remain impartial during

labor negotiations. *Id.* Accordingly, Plaintiffs seek a declaration that Defendant has violated the SCA and that Defendant will not subsequently challenge wage parity if obtained on behalf of Space Alliance employees.

## STANDARD OF REVIEW

In *Bell Atl. Corp. v. Twombly*, plaintiffs alleged that conscious parallel conduct by telephone and high speed internet service providers constituted a violation of the Sherman Act. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1961 (2007). The District Court granted Defendants motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiffs' allegation of conscious parallelism could be explained by defendants' "own interest in defending individual territory." *Id.* at 1963. The Supreme Court agreed, holding that plaintiffs' claim "requires a complaint with enough factual matter...to suggest that an agreement was made. *Id.* at 1965. In addressing a motion under Fed. R. Civ. P. 12(b)(6), a court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. *Id.* The factual allegations must raise a right to relief beyond speculation. *Id.* The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).[2]

---

[2]     Generally speaking, the Court should not consider matters beyond the pleadings without converting the motion for summary judgment. Fed. R. Civ. P. 12(b)(6). Nonetheless, there are important exceptions to this general principle. The Court may properly take judicial notice of court records without converting a motion to dismiss into a motion for summary judgment. *Baker v. Henderson*, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001)("in determining whether a complaint fails to state a claim, the court may. . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); *Himmelman v. MCI Communications*, 104 F. Supp. 2d 1, 3 (D.D.C.

3

## **ARGUMENT**

### A. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR WANT OF FINAL AGENCY ACTION

Although this action is based on the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, compl. at ¶9, there is a conspicuous absence of agency action and certainly not a final one. The pertinent proviso of §702 is as follows:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States.... The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

The legislative history makes it clear that the language added to §702 by a 1976 amendment was intended solely to remove sovereign immunity as a bar to judicial review of federal administrative action. 1976 *U.S. Code Cong. & Ad. News* 6121-24, 6131-32, 6137-38. In addition, §704 states that, unless made reviewable by statute, only "final agency action for which there is no other adequate remedy in a court" is reviewable under the APA. Agency Action includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. 5 U.S.C. 551(13). The D.C. Circuit uniformly requires two elements for final agency action: first, the agency action must come out of the agency's decision

---

2000)("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.")

4

making process and, second, it must determine, change, or create legal rights or obligations. *See, e.g., Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004).

Neither of the elements considered by the Circuit are present here. Plaintiffs' interpretation of the statement allegedly made by Mr. Haddad is wholly unreasonable. Even if true, Mr. Haddad's statement did not arise out of Defendant's decision making process nor did it change Plaintiffs' legal rights. With regard to the latter, it is worth noting that Plaintiffs are seeking a declaration that Defendant will not take a future action. In other words, in addition to there being an absence of agency action, it is clear that Plaintiffs' concerns are speculative at best.

It is also noteworthy that Plaintiffs fail to allege any facts that suggest that any good faith due diligence was exercised to determine whether Mr. Haddad's alleged statements could be attributed to Defendants.[3] At the very least, Plaintiffs should have made a minimal effort to verify the statement attributed to Mr. Haddad or contacted the Space Programs Operations

---

[3] Under 48 CFR 1.601(a), unless specifically prohibited by another provision of law, authority and responsibility to contract for authorized supplies and services are vested in the agency head. The agency head may establish contracting activities and delegate broad authority to manage the agency's contracting functions to heads of such contracting activities. Contracts may be entered into and signed on behalf of the Government only by contracting officers. In some agencies, a relatively small number of high level officials are designated contracting officers solely by virtue of their positions. Contracting officers below the level of a head of a contracting activity shall be selected and appointed under 1.603.

Also, 48 CFR §1.602 (a) provides that Contracting officers have authority to enter into, administer, or terminate contracts and make related determinations and findings. Contracting officers may bind the Government only to the extent of the authority delegated to them. Contracting officers shall receive from the appointing authority (see 1.603-1) clear instructions in writing regarding the limits of their authority. Information on the limits of the contracting officers' authority shall be readily available to the public and agency personnel. Subsection (b) states that no contract shall be entered into unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met.

contracting officer. In the absence of any remote suggestion of agency action or even minimal attempts to verify alleged statements attributed to Defendant, Plaintiffs' complaint should be dismissed.[4]

### B. PLAINTIFFS' LACK STANDING TO MAINTAIN THIS CLAIM

A party seeking relief in federal court must satisfy *both* constitutional and prudential limitations in order to have standing to sue. The Article III constitutional limitations have been summarized by the Supreme Court in *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1981):

> ... At an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, [99 S. Ct. 1601, 60 L. Ed. 2d 66] (1979) and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, [48 L. Ed. 2d 450, 96 S. Ct. 1917(1976).

The prudential limitations on standing are those imposed by the courts themselves:

> ... Thus, this Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, [45 L. Ed. 2d 343, 95 S. Ct. 2197] (1975). In addition, even when the plaintiff has alleged a redressable injury sufficient to meet the requirements of Art. III, the Court has

---

[4] Since there was no final agency action, there was no process to administratively exhaust. Had Plaintiffs' attempted a minimal effort to verify the basis of their allegations, perhaps a process would have been put in place. In any event, Plaintiffs would have been required to exhaust whatever remedies were offered to address their concerns.

6

> refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representative branches. *Id.* at 499-500. Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970); *Valley Forge*, 454 U.S. at 474-75.

Plaintiffs have failed woefully to plead any facts that would satisfy the above standing requirements. With regard to the statement attributed to Mr. Haddad, Plaintiffs have not demonstrated that they suffered any injury because they have not pled any facts that would justify attributing those alleged statements to Defendant. Plaintiffs also allege injury because they have been unable to settle with Space Alliance for the amount they consider being in "parity" with another contractor's collective bargaining agreement because the agency has not, in Plaintiffs' view, been entirely neutral in offhand comments. However, under the language of the SCA, failure to achieve successful negotiation of a collective bargaining agreement is not an injury:

> No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract.
> 41 U.S.C. § 353(c) (1976).

With respect to any collective bargaining agreement, the SCA says nothing of the agency's responsibility for formulation or negotiation of such agreements, it imposes absolutely no duty on contracting federal agencies with respect to participation or non-participation in collective bargaining negotiations or disputes arising therefrom, and it does not recognize any "injury" for difficulties an employee union may have, for whatever reason, in achieving such agreement. The statute only recognizes an "injury" to employees who are paid less than the applicable minimum wages that should be paid as a result of collective bargaining agreements actually negotiated at arms length in good faith.

Plaintiffs' reliance upon 48 CFR § 22.101-1 to support the asserted SCA violation is misplaced because this section is not regulatory implementation of the SCA, and it does not provide mandatory obligations on federal agencies to be followed for compliance with the Act. We note that § 22.101 is not a regulation promulgated by the Secretary of Labor under 41 USC § 353, but it is instead general labor relations guidance issued jointly by the Secretary of Defense, the Administrator of General Services, and the Administrator, National Aeronautics and Space Administration, pursuant to their several statutory authorities under the Federal Acquisition Regulation System in accordance with the requirements of the Office of Federal Procurement Policy Act of 1974 (Pub. L. 93-400), as amended by Pub. L. 96-83. (48 C.F.R. § 1.103). It follows that § 22.101-1 does not impose any duty on any agency insofar as compliance with the SCA is concerned. Accordingly, these regulations are internal general guidance to contracting officers and acquisition officials, and do not provide any right of remedy to plaintiffs. Plaintiffs

fail to cite any part of the FAR regulatory implementation of the SCA, which is located in 48 C.F.R. Subpart 22.10.[5]

Perhaps nothing more exposes the emptiness of Plaintiffs' claims than that they seek relief for an action that Defendant has not taken and that there is not even an inkling that Defendant might take. Plaintiffs seek an order that Defendant will not subsequently challenge, on parity grounds, the wage levels set by a collective bargaining agreement that did not exist when the complaint was filed.[6]

## CONCLUSION

Upon the foregoing, the Individual Defendants respectfully request that they be dismissed from this action.

Dated: November 16, 2007            Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

---

[5] DoD, GSA, & NASA jointly-issued Service Contract Act implementation regulations appear are promulgated in FAR Subpart 22.10 -- Service Contract Act of 1965, as Amended, the scope of which is to prescribe policies and procedures implementing the provisions of the Service Contract Act of 1965, as amended (41 U.S.C. 351, et seq.), the applicable provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201, et seq.), and related Secretary of Labor regulations and instructions (29 CFR Parts 4, 6, 8, and 1925). (48 CFR § 22.1000).

[6] Similarly, if a plaintiff only presents "imaginary or speculative" fears, there is no case or controversy for the court to redress. *Younger v. Harris*, 401 U.S. 452, 459 n.10 (1974). This is especially so in this case where there is no continuing case or controversy because, as indicated earlier, Plaintiffs and Space Alliance have resolved this labor dispute.

/s/
KENNETH ADEBONOJO
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 514-7157
Fax: (202) 514-8780
kenneth.adebonojo@usdoj.gov

**Of Counsel:**

Donald H. Schiller, Esq.
Assistant Chief Counsel
NASA Kennedy Space Center

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INT'L ASSOC. OF MACHINISTS AND ) <br> AEROSPACE WORKERS, DISTRICT LODGE ) <br> 166 and AFL-CIO, LOCAL LODGE 2061 ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MICHAEL GRIFFIN, Administrator, National ) <br> Aeronautics and Space Administration ) <br> ) <br> Defendant. ) <br> _____ ) | No. 1:07cv1459 (CKK) |

## ORDER

This matter comes before the Court on Michael Griffin, Administrator, National Aeronautics and Space Administration's ("Defendant") motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' complaint. After considering the appropriate pleadings, the record herein, and applicable law,

    it is this ____ day of _____, 2007, hereby

ORDERED, Defendant's motion is hereby GRANTED;

FURTHER ORDERED, that Plaintiffs' complaint is hereby DISMISSED with prejudice.

                                                          _____
                                                          Honorable Colleen Kollar-Kotelly, U.S.D.J.