## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, DISTRICT LODGE 166
and LOCAL LODGE 2061, AFL-CIO,
    271 Taylor Avenue
    Cape Canaveral, FL 32920

                   *Plaintiffs*,

v.

MICHAEL GRIFFIN, Administrator, National
Aeronautics and Space Administration
    Office of the Administrator
    NASA Headquarters
    300 E Street, S.W.
    Washington DC  20546-0001,
                  *Defendant*.

Civil Action No. 1:07-cv-1459 (CKK)

## PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE
## TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs International Association of Machinists and Aerospace Workers, District Lodge

166 and Local Lodge 2061, AFL-CIO (collectively, hereinafter the "IAM") respectfully submit

this Memorandum of Law in Response to the Motion to Dismiss filed by defendant Michael

Griffin (hereinafter "NASA") pursuant to Fed. R. Civ. P. 12(b)(6).  NASA's Motion to Dismiss

is largely premised on unsupported factual assertions that are absent from the allegations of the

Complaint.  Accordingly, these assertions provide no basis for relief under Rule 12(b)(6), and,

for this and several other reasons, NASA's Motion to Dismiss must be denied.

### FACTUAL BACKGROUND

On August 13, 2007, the IAM filed suit against NASA regarding NASA's interventions

into ongoing collective bargaining negotiations between the IAM and United Space Alliance,

LLC (hereinafter "Space Alliance"), a firm holding a service contract with NASA to provide

support functions for NASA's manned space launches at the Kennedy Space Center in Cape

Canaveral, Florida.  Compl. ¶¶ 14-15.  The IAM is the exclusive bargaining agent for certain

Space Alliance employees at the Kennedy Space Center.  Id. at ¶ 17.

In mid-2007, the collective bargaining agreement ("CBA") between Space Alliance and

the IAM expired, and Space Alliance and the IAM commenced negotiations for a new

agreement.  Id. at ¶ 18.  Instead of allowing Space Alliance and the IAM to negotiate free from

government interference and at arms length, as it is required to do under the Service Contract Act

(hereinafter "SCA"), 41 U.S.C. § 351 et seq., NASA exerted pressure on Space Alliance to insist

on a lower wage level than it otherwise would have agreed to with the IAM.  Id. at ¶ 21.

NASA's pressure took the form of threats by NASA to Space Alliance that it would not

reimburse Space Alliance for increased costs under any circumstances, even though the SCA

mandates that NASA must reimburse service contractors for increased labor costs that result

from arms-length collective bargaining negotiations and conform to prevailing wage levels in the

locality.  Id. at ¶ 23.   NASA's coercive actions were reflected both in remarks made by NASA's

Regional Labor Advisor, Samuel Haddad, to IAM Directing Business Representative Johnny

Walker, as well as in statements by representatives of Space Alliance to the IAM made in the

course of their bargaining.  Id. at ¶¶ 22-25.

As a result of NASA's conduct, the IAM was unable to achieve the wage level that it

sought in bargaining (and which is paid to a similarly-situated group of employees at Launch

Alliance, another NASA service contractor owned by the same parent corporations as Space

Alliance).  Id. at ¶¶ 19-21.  The IAM commenced a strike against Space Alliance over this wage

issue as a result, and NASA's conduct had the effect of prolonging this labor dispute.[1]  Id. at ¶ 20-21.

The IAM seeks declaratory and injunctive relief to prevent NASA from unlawfully interfering in the collective bargaining relationship between the IAM and Space Alliance. NASA has moved to dismiss the IAM's Complaint under Fed. R. Civ. P. 12(b)(6), arguing that the IAM fails to state a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 500 et seq., and that the IAM lacks both Constitutional and prudential standing.  NASA's motion must be denied because, among other reasons, NASA has grounded its complaint in facts extrinsic to the pleadings, and as such, has demonstrated no basis for dismissal under under Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I.    NASA's Motion to Dismiss Relies on Facts Outside of the Pleadings in Contravention of Rule 12(b)(6)

Under Fed. R. Civ. P. 8(a), a plaintiff's complaint is only required to plead  "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Fed. R. Civ. P. 12(b)(6) can be used to evaluate the formal sufficiency of a party's factual pleadings to determine whether they state a plausible claim to legal relief under this standard.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1975 (2007).  In conducting a Rule 12(b)(6) analysis, a court must assume that the allegations in

---

[1] As NASA points out in its brief, the IAM and Space Alliance have reached agreement on a new CBA since the filing of the Complaint in this matter.  Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss ("NASA Br."), p. 1 n.1.  As discovery in this matter would establish, the new CBA does not contain parity wages for the Space Alliance employees vis-à-vis Launch Alliance employees.  And, as alleged in the Complaint, NASA has continued to engage in the recurring pattern and practice of unlawful behavior that is at issue here.  See Compl. ¶ 9.

a complaint are true, id. at 1965, and it construes "the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged," Stewart v. National Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).  The court is constrained to consider only "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."[2]  Id.  "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

NASA's motion to dismiss fails this standard completely.  NASA's Motion to Dismiss is grounded on its assertion that NASA Regional Labor Advisor Haddad lacked authority to speak to the IAM on behalf of NASA.  See NASA Br. at pp. 5-7, 9.  In construing the IAM's Complaint to make this argument, NASA grossly misreads the allegations in the Complaint, and it substantially relies on its own, unsupported factual contentions regarding the extent of Haddad's authority.

NASA states that "the gravamen" of the IAM's Complaint is that Haddad "met informally" with IAM representative Walker at "Fish Lips Bar in Port Canaveral" and— "offhand[edly]"—"informed Walker that NASA will not increase the amount allocated to Space Alliance until the completion of the shuttle program and that Space Alliance will not be reimbursed for any increase in labor costs."  NASA Br. at pp. 2, 7.  The Complaint contains no

---

[2]NASA points out that, on a Rule 12(b)(6) motion, a court may take judicial notice of "matters of a general public nature, such as court records."  See NASA Br. at p. 3 n.2 (quoting Baker v. Henderson, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001).  NASA wholly fails to demonstrate, however, how any of the extrinsic facts upon which it relies in its motion could constitute matters, like court records, which are incapable of reasonable factual dispute.  Certainly whether or not Haddad's remarks to the IAM reflected the views of his employers, or could be attributed to NASA, are not "matters of a general public nature" under this standard.

such allegations.  <u>See</u> Compl. ¶ 23.  Nor, contrary to NASA's assertions, does the Complaint allege that the IAM's suit is based solely on a single conversation between Haddad and Walker. NASA Br. at 2.  Instead, the Complaint alleges that "<u>NASA</u> has exerted direct pressure on Space Alliance," and that "<u>NASA</u> has made statements that have exerted . . . coercive pressure" on Space Alliance.  Compl. at ¶ 21 (emphasis added). Haddad's alleged statements are alleged to be <u>reflective</u> of NASA's policy of interfering with its contractor's collective bargaining negotiations, which was also evidenced by statements made by Space Alliance representatives during bargaining.  <u>See</u> Compl. ¶ 25 ("NASA has continued to maintain the position expressed on behalf of defendant by Haddad.").

These allegations therefore sufficiently state that the alleged wrongful conduct was perpetrated by NASA, and is attributable by NASA.  The IAM is therefore entitled to conduct discovery to determine whether Haddad's statements, were, in fact, accurate statements of NASA's policy.  <u>See</u> <u>Twombly</u>, 127 S. Ct. at 1965 (Rule 12(b)(6) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the elements of the claim].").

As for Haddad himself, the IAM alleges that, in speaking with the IAM Representative, Haddad acted "as an agent . . . and representative of [NASA]."  Compl. ¶ 23.  NASA responds by disputing the proposition that Haddad was an agent of NASA, asserting that the IAM has "not pled any facts that would justify attributing the alleged statements to [NASA]," NASA Br. at p. 7; and then contends that if Haddad was not an agent of NASA, then IAM's claims merit dismissal, <u>see</u> NASA Br. at pp. 5-6.

NASA's response fails at many levels.  First, it is plausible to infer from Haddad's

position in NASA that he has authority to speak on behalf of NASA.  For example, 48 C.F.R. §

22.10, which, as NASA points out, implements the SCA, <u>see</u> NASA Br. at p. 9, and is part of the

same Federal Acquisition Regulations that NASA relies upon in arguing that Haddad has no

authority, <u>see</u> <u>id.</u> at p. 5 n.3,  defines "agency labor advisor" as "an individual responsible for

advising contracting agency officials on Federal contract labor matters."

　　　Second, quite apart from that, the IAM, at the pleading stage, satisfies Rule 8 by alleging

that Haddad was an agent; the factual details need not be further plead.[3]  <u>See</u>, <u>e.g.</u>, <u>Bartholet v.</u>

<u>Reishauer A.G. (Zurich)</u>, 953 F.2d 1073, 1078 (7th Cir. 1992) ("A complaint under Rule 8 limns

the claim; details of both fact and law come later, in other documents.").

　　　 Third and perhaps most fundamentally, regardless of whether Haddad acted with

authority to speak for NASA, the IAM is entitled to discover whether his statements accurately

revealed policies established by those who indisputably do act with authority at the agency.

Thus, to the extent that NASA's motion to dismiss is premised on its contention that the IAM

cannot prove its factual allegations regarding Haddad, NASA's motion is unfounded and must be

denied.

**II.**　　**The IAM's Complaint Asserts a Claim for "Non-Statutory Review" of Agency Action, Which Requires No Showing of "Final Agency Action" under the APA**

　　　NASA argues that the IAM's Complaint must be dismissed because Haddad's statement

could not constitute "final agency action" under the APA.  NASA Br. at pp. 5-6.  As explained

---

[3]In this regard, NASA's contentions regarding Haddad's lack of authority demonstrate well the
need for the type of discovery contemplated by the Federal Rules, under which an adversary can
be compelled to give a statement under oath, and the truth of a disputed factual matter can be
ultimately decided by an appropriate trier-of-fact.

above, to the extent that NASA's arguments are based on its misreading of the Complaint and its factual contention that Haddad had no authority to act for NASA, NASA's assertions are entitled to no consideration on a Rule 12(b)(6) motion.  See supra at pp. 3-4.  More importantly, however, NASA misconstrues the nature of the IAM's claim, which does not require any proof of a "final agency action."

As the Complaint makes clear, the IAM's claim is a "non-statutory review" action.  See Compl. ¶ 9.  Such a claim may be brought under the Court's federal question jurisdiction to challenge an ultra vires action of a government agency.  See, e.g., Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 190 (D.C. Cir. 2006) (the doctrine of non-judicial review provides that "'judicial review is available when an agency acts ultra vires, even if a statutory cause of action is lacking'") (quoting Aid Ass'n for Lutherans v. United Postal Serv., 321 F.3d 1166, 1173 (D.C. Cir. 2003); Chamber of Commerce v. Reich, 74 F.3d 1322, 1328-29 (D.C. Cir. 1996).  Here, the IAM has alleged that NASA has acted ultra vires by violating the duties imposed by it under the SCA and its regulatory scheme, as well as under the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., to remain neutral in the labor negotiations between its service contractors and their employees.  Compl. ¶ 28; see also infra pp. 14-16.

Although non-statutory review claims rely on the waiver of sovereign immunity for government agencies expressed in 5 U.S.C. § 702, the D.C. Circuit has held that there is no requirement that a non-statutory review plaintiff demonstrate "final agency action" or the other elements of a claim brought directly under the APA.  See Trudeau, 456 F.3d at 187. Accordingly, NASA's argument that Haddad's statements do not constitute "final agency action"

under the APA have no bearing on the IAM's claim, and provide no basis for dismissal of its Complaint.

### III.    The IAM Has Alleged An Injury Sufficient to Establish Its Standing To Bring Its Suit

NASA also argues that the IAM's claim fails for lack of standing under both Article III and "prudential standing" standards.  "[T]o establish standing under Article III, a complainant must allege (1) a personal injury-in-fact that is (2) 'fairly traceable' to the defendant's conduct and (3) redressable by the relief requested."  Rainbow/Push Coalition v. Federal Communications Comm'n, 396 F.3d 1235, 1240 (D.C. Cir. 2007) (internal citations and quotation marks omitted).  The injury-in-fact must also be both "concrete and particularized" and "actual or imminent."  Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To establish "prudential standing" to bring a suit against a government agency under 5 U.S.C. § 702, "a plaintiff must establish that the injury he complaints of . . . falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."  Amgen, Inc. v. Smith, 357 F.3d 103, 108 (D.C. Cir. 2004) (internal citation and quotation marks omitted).

A plaintiff's burden at the pleading stage to establish standing is minimal: "'general factual allegations of injury resulting from the defendant's conduct may suffice,' and the court 'presum[es] that general allegations embrace the specific facts that are necessary to support the claim.'"  Renal Physicians Ass'n v. United States Dep't of Health & Human Servs., 489 F.3d 1267, 1273 (D.C. Cir. 2007) (quoting Sierra Club v. EPA, 292 F.3d 895, 898-99 (D.C. Cir. 2002)).

Courts have previously held that unions have standing to bring suit to challenge agency

action under the SCA.  See, e.g., International Ass'n of Machinists & Aerospace Workers v. Hodgson, 515 F.2d 373, 377 (D.C. Cir. 1975) (IAM had standing to challenge Department of Labor decision not to make a wage determination for service contract workers at NASA); Service Employees Int'l Union v. General Servs. Administration, 830 F. Supp. 5 (D.D.C. 1993). As in those cases, the IAM's allegations demonstrate all of the required elements of standing here.

### 1.  The IAM has Alleged a Concrete and Particularized Injury-in-Fact

The IAM has alleged that NASA's conduct prolonged the labor dispute between the IAM and Space Alliance, and that, but for NASA's conduct, the employees represented by the IAM would have received higher wages and benefits in parity with those received by employees at Launch Alliance.  See Compl. ¶¶ 10, 21.  The economic injury alleged suffered by the employees represented by the IAM is a "paradigmatic form[]" of injury-in-fact.  Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 291 (3d Cir. 2005).  This type of economic harm can also constitute injury-in-fact even where the plaintiffs are unable to seek damages, but seek other relief, from a government agency.  See Clifford v. Pena, 77 F.3d 1414, 1416 (D.C. Cir. 1996) (holding that the "potential loss of American jobs was a sufficient injury to confer standing" on a union seeking to overturn agency action).[4]  Accordingly, the economic injury to the Space Alliance employees represented by the  IAM, as well as the hardships imposed on the IAM and the employees by the prolonged strike, readily satisfy the pleading requirements for this element

---

[4]In addition, an organization has standing to sue on behalf of its members where, as here, "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  Renal Physicians Ass'n., 489 F.3d at 1276 (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

of standing.

      2.   The Injury-in Fact Alleged by the IAM is Fairly Traceable to NASA's Conduct

The injury allegedly suffered by the IAM in its bargaining with Space Alliance is fairly traceable to NASA's conduct. Where, as here, a plaintiff asserts that an alleged injury flows not directly from a challenged agency action, but rather from independent actions of third parties, the plaintiff need only show that the "'the agency action is at least a substantial factor motivating the third parties' actions.'" Tozzi v. United States Dep't of Health & Human. Servs., 271 F.3d 301, 308 (D.C. Cir. 2001) (quoting Creative Non-Violence v. Pierce, 814 F.2d 663, 669 (D.C. Cir. 1987)). This standard demands less of plaintiffs than a tort causation standard. Id. Here, the IAM has alleged that "[t]hroughout the negotiations" Space Alliance representatives explained that they were unable to accept the IAM's wage proposals due to "customer issues," i.e., the pressure it received from NASA, even though the wage proposals would have otherwise ordinarily been accepted. Compl. ¶ 25. These allegations suffice to demonstrate the causation requirement of the standing analysis, as they support the plausible inference that NASA's conduct was a substantial factor that motivated Space Alliance to refuse to accept the IAM's parity-based wage proposals. See Service Employees Int'l Union, 830 F. Supp. at 8 (holding union had standing to challenge agency's promulgation of a SCA-implementing regulation; noting that "[t]he mere fact that causality may depend to some extent of [sic] the actions of a third party, in this case, the service contractors, is not a bar to standing.").

NASA's only argument as to the "injury-in-fact" element is that the IAM has "not pled any facts that would justify attributing [Haddad's] statements to [NASA]." NASA Br. at p. 7. That is not, however, an "injury-in-fact" argument at all. It is a restatement of NASA's defense

on the merits and hence an argument not ripe to be considered at the pleadings stage.

    3.  <u>The Injury to the IAM Caused by NASA is Redressable By the Relief Sought in the Complaint</u>

The redressability element requires that a plaintiff allege that its injury is likely to be redressed by the relief that it seeks. See <u>Lujan</u>, 504 U.S. at 561; <u>Tozzi</u>, 271 F.3d at 309. Redressability is determined by the facts that existed at the time the complaint was filed. <u>Lujan</u>, 504 U.S. at 571 n.4. Here, at the time the Complaint was filed, the injury the IAM alleged—NASA interference in the IAM's negotiations with Space Alliance—would plainly be redressed by the relief IAM is seeking: a declaration that such interference is unlawful and an injunction prohibiting future interference.

Furthermore, the Complaint alleges that NASA has engaged in a recurring pattern and practice of contravening the SCA regulatory scheme and obstructing efforts by service contractors to obtain reimbursements for labor expenses, see Compl. ¶ 26, and therefore the relief sought will redress the IAM's injury even though the strike identified in the Complaint has been settled. The IAM has therefore met its burden to allege "'facts from which it reasonably could be inferred that, absent the [challenged policy], there is a substantial probability that ... if the court affords the relief requested, the asserted [injury] will be removed.'" <u>Emergency Coalition To Defend Educ. Travel v. United States Dep't of Treasury</u>, 498 F. Supp. 2d 150, 161 (D.D.C. 2007) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 504 (1975)) (finding plaintiffs had established redressability where there was "no reason to even suppose" that universities would not reinstate educational programs in Cuba if agency action was reversed).

In so far as NASA speaks to the redressability element in its briefs, it does so by asserting that NASA has not "taken" any action to injure the IAM (because it asserts that Haddad's

11

statements cannot be attributed to NASA), and "there is not even an inkling" that it might do so. NASA Br. at p. 5, 9. NASA also suggests that the resolution of the labor dispute between the parties has rendered the IAM's claim "imaginary or speculative." Id. at p. 9.

Of course, NASA's own contentions about what actions it has taken, or what may be attributable to it, are not determinative of the IAM's legal rights or standing to bring suit. More importantly, the IAM has alleged that NASA—not Haddad—has engaged in a recurring pattern and practice of interfering in the IAM's negotiations with Space Alliance. Compl. ¶ 26. As elsewhere, NASA's contentions regarding Haddad's authority are wholly besides the point. And the IAM seeks an injunctive relief to prevent NASA—not merely Haddad—from continuing to engage in this conduct. As the IAM has alleged, Space Alliance made clear during its negotiations that it was NASA's conduct that prevented the IAM from achieving the wage levels that it otherwise would have achieved through collective bargaining. Id. at ¶ 25. Thus, an injunction would redress the IAM's injury by enabling it to engage in true arms-length negotiations with Space Alliance, and thereby achieve parity wages.

The IAM's claim is also not rendered moot or speculative by the resolution of the IAM-Space Alliance labor dispute. First, as already noted, the Complaint alleges a pattern and practice by NASA of interfering in its contractors' labor relations in violation of the SCA. While that point is dispositive, we would also add that the IAM and Space Alliance remain in an ongoing collective bargaining relationship. The terms of a collective bargaining agreement are subject to constant negotiation and interpretation through the parties' grievance and contract administration procedures, and evidence of the circumstances of the negotiations between the parties are a common feature of these processes. See generally United Steelworkers v. Warrior

& Gulf Navigation Co., 363 U.S. 574 (1960). And the IAM could petition Space Alliance to renegotiate the collective bargaining agreement if it were found that the agreement was the product of NASA's undue interference in its contractor's labor relations. For these reasons, the declaration that the IAM seeks in the Complaint is still a necessary and useful tool to redress the injuries that it has experience.

### 4.    The IAM's Injury Falls Within the "Zone-of-Interests" Protected by the SCA

NASA argues that the injury allegedly suffered by the IAM is not recognized in the SCA—in other words, the IAM's injury is not within the "zone of interests" that the SCA is intended to protect or regulate. See NASA Br. at pp. 7-8. In general, the D.C. Circuit has noted that

> [t]he [zone-of-interests] test is not a particularly demanding one . . ., and includes not only those challengers expressly mentioned by Congress, but also unmentioned potential challengers that Congress would have thought useful for the statute's purpose (whose challenges thereby support an inference that Congress would have intended eligibility.) . . . It excludes parties whose interests are not consistent with the purposes of the statute in question.

Ethyl Corp. v. EPA, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (internal citations omitted). A plaintiff need only show that its asserted interest is "arguably" within the zone of interests. See National Petrochemical & Refiners Ass'n v. EPA, 287 F.3d 1130, 1147 (D.C. Cir. 2002) (quoting Cement Kiln Recycling Coalition v. EPA, 255 F.3d 855, 970 (D.C. Cir. 2001)). "Indeed a petitioner 'is outside the statute's "zone of interests" only "if [petitioner's] interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."'" Id. (quoting Motor & Equip. Mfrs. Ass'n v. Nichols, 142 F.3d 449, 458 (D.C. Cir 1998)).

There can be no question that the IAM's interests at issue in this suit fall within the zone of interests protected by the SCA. The SCA establishes a statutory scheme specifically intended to protect employees of federal service contractors so as to ensure that they receive the same wages for their work as they would through the free market, despite the potential distortions to that market that are threatened by the purchasing power of the federal government in the market for labor. See generally Gracey v. International Bhd of Elec. Workers, Local Union No. 1340, 868 F.2d 671, 673-74 (4th Cir. 1989) (describing the SCA regulatory scheme). This purpose is evident in the legislative history of the SCA, and it has been stated with perfect clarity in the Department of Labor regulations that have been promulgated to implement the SCA: "[t]he Act's purpose is to impose obligations upon those favored with Government business by precluding the use of the purchasing power of the Federal Government in the unfair depression of wages and standards of employment." 29 C.F.R. § 4.104 (citing H.R. Rep. No. 948, 89th Cong., 1st Sess. 2-2 (1965); S. Rep. No. 798, 89th Cong., 1st Sess. 3-4 (1965)); see also Gracey, 868 F.2d at 677 n.3 ("We think a reading of the [SCA] in its entirety indicates a fidelity to the collective bargaining process on the part of Congress and a preference for agreements reached through arms-length negotiation . . . ."); Halifax Technical Servs. v. United States, 848 F.Supp. 240, 244 (D.D.C. 1994) ("The primary purpose of the [SCA] is to provide wage and benefit protection to employees of federal contractors."); Local 666 & 780 of the Int'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators v. United States Department of Labor, No. 83 C 4876, 1983 WL 2115 (N.D. Ill. Dec. 7, 1983) (holding unions representing employees of a service contractor would have standing under SCA to challenge actions by NASA).

14

The SCA statutory scheme necessarily contemplates—and implicitly requires—that government agencies are to remain neutral vis-à-vis the labor relations between their service contractors and the contractors' employees.  Logically, if agencies are free to intervene in the bargaining between a contractor and its employees, and, as alleged here, dictate terms to the parties—as NASA suggests they can, see NASA Br. at 8—then the SCA's promise that workers are entitled to wages received through arms-length collective bargaining is rendered totally illusory.  See 41 U.S.C. § 351(a)(1).  There can be no arms-length negotiations between a service contractor and its union where the government is free to dictate the wages that will be paid by the contractor.

This required neutrality is expressed in the regulations that have been promulgated to implement the SCA.  48 C.F.R. § 22.101-1(b)(1) states that "[a]gencies shall remain impartial concerning any dispute between labor and contractor management and not undertake the conciliation, mediation, or arbitration of a labor dispute."[5]    And the provisions of the FAR which specifically implement the SCA also embody this neutrality requirement.  For example, 48 C.F.R. § 22.1013 establishes the procedure to be followed in the event that a contractor seeks reimbursement for wages in a collective bargaining agreement that the agency believes vary substantially from those prevailing for similar services in the locality.[6]  These procedures would be unnecessary if agencies were free to set wages for service contractors prior to the formation of

---

[5] Contrary to NASA's assertions, this regulation falls within the part of the Federal Acquisition Regulations ("FAR") that are intended to implement the SCA.  See 48 C.F.R. 22.000 ("This part . . . (b) [p]rescribes contracting policy and procedures for implementing pertinent labor laws.").
[6] Specifically, 48 C.F.R. § 22.1013 provides in part that "[i]f wages, fringe benefits, or periodic increases provided for in a collective bargaining agreement vary substantially from those prevailing for similar services in the locality, the contracting officer shall immediately contact the agency labor advisor to consider instituting the procedures in [48 C.F.R. §] 22.1021."

a collective bargaining agreement.

As these regulations demonstrate, the SCA was intended to protect the very interests that the IAM allege were harmed here, i.e., the interests of employees of federal service contractors in receiving fair wages as a result of arms-length collective bargaining.

## CONCLUSION

As the foregoing demonstrates, the IAM has sufficiently alleged the elements for non-statutory review of NASA's conduct that contravened the SCA, and it has sufficiently alleged that it has suffered an injury to NASA's conduct that can be redressed through declaratory and injunctive relief.  Accordingly, NASA has demonstrated no basis on which the IAM's Complaint can be dismissed under Fed. R. Civ. P. 12(b)(6), and its Motion to Dismiss must therefore be denied.


Dated: December 14, 2007.

                                        Respectfully submitted,


                                          /s/Leon Dayan_____
                                        Leon Dayan (D.C. Bar No. 444144)
                                        Joshua B. Shiffrin (D.C. Bar No. 501008)
                                        BREDHOFF & KAISER P.L.L.C.
                                        805 Fifteenth Street NW
                                        Suite 1000
                                        Washington, DC 20008
                                        (202)842-2600

                                        *Counsel for Plaintiffs International
                                        Association of Machinists and Aerospace
                                        Workers, District Lodge 166 and Local
                                        Lodge 2061*