UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INT'L ASSOC. OF MACHINISTS AND )<br>AEROSPACE WORKERS, DISTRICT LODGE )<br>166 and AFL-CIO, LOCAL LODGE 2061 )<br>                                                  )<br>          **Plaintiffs,**                   )<br>                                                  )<br>     v.                                          )<br>                                                  )<br>**MICHAEL GRIFFIN, Administrator, National** )<br>**Aeronautics and Space Administration** )<br>                                                  )<br>          **Defendant.**                   )<br>                                                  ) | No. 1:07cv1459 (CKK)<br>ECF |

## REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Michael Griffin, Administrator, National Aeronautics and Space Administration ("Defendant"), through undersigned counsel, respectfully submits this reply memorandum to the opposition filed by International Association of Machinists and Aerospace Workers, District 166 and Local 2061 ("Plaintiffs") to Defendant's Motion to Dismiss.[1]  Despite their protestations, this entire action is based on an alleged statement by Sam Haddad, a labor adviser employed by Defendant, that Defendant will not reimburse United Space Alliance ("Space Alliance" or "employer"), with whom it was a party to a contract covered by the Service Contract Act ("SCA"), for wage increases incurred under Space Alliances' contract with its employees.  Pl. Compl., at ¶¶22-23; Pl. Opp. at 2.  Plaintiffs allege that Defendant "exerted *direct* pressure on Space Alliance that has distorted the collective bargaining process," *id.*, but fails to plead even one solitary fact as the basis for this unfounded allegation.  Accordingly, Plaintiffs allege that

---

[1]  Plaintiffs have been the exclusive collective bargaining representative of certain employees of Unites Space Alliance ("Space Alliance' or "employer") since 1983 and has negotiated several agreements on their clients' behalf.  Pl. Compl., at ¶2, 17.

Defendant violated the SCA. Elsewhere, Plaintiffs allege that Defendant violated 28 C.F.R. 22.101(b)(1) by improperly interfering with their contract negotiations with Space Alliance as established by Haddad's alleged statement and the unsubstantiated "direct pressure." Based on these claims, Plaintiffs commenced this action for a "non-statutory" review pursuant to 5 U.S.C. §702, pl. compl., at ¶9, seeking a declaration that Defendant "has violated the SCA and its implementing regulations"; that Defendant will not bring a wage variance action under 41 U.S.C. 353(c), *id*. at ¶31; and an injunction against Defendant making future threats. *Id*. at ¶32.

Clearly, this entire action is based on a dubious and tortured cobbling of unrelated statutory and regulatory provisions. For example, the SCA imposes no obligation on Defendant that supports Plaintiffs' claims of improper interference and, to the extent that 28 C.F.R. 22.101(b)(1) prohibits the conduct Plaintiffs allege, the alleged Haddad statement is not attributable to Defendant. In other words, there is no final agency action to enable judicial review. Moreover, even if there was improper interference, which, to be sure, there was not, Plaintiffs' redress would be under the Contracts Dispute Act, 41 U.S.C. 601 *et seq*., which provides the appropriate mechanism for Plaintiffs to challenge Defendant's alleged actions and at the same time enable the creation of a proper administrative record for judicial review. Finally, it is not disputed that the labor dispute has been resolved pursuant to an agreement between Plaintiffs and Space Alliance. Pl. Opp., at 3, n1. Therefore, not only can Plaintiffs not establish Article III and prudential standing, there is no basis for the Court to grant the declaratory and injunctive relief that Plaintiffs seek.

In addressing this motion, it is important to keep in mind the Supreme Court's admonition that factual allegations in a complaint must raise a right to relief beyond mere

speculation. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)(noting that the District Court properly dismissed a complaint where Plaintiff's allegations were not sufficiently specific to raise a cause of action). *Twombly* compels dismissal here because the facts alleged are insufficient to raise a cause of action as pled and, although not bound to accept them, Plaintiffs' legal conclusions are not supported by the facts.

First, Plaintiffs argue that the Motion to Dismiss should be denied because it relies on facts outside the pleadings to the extent that Defendant argues that Haddad was not authorized to speak on behalf of Defendant. Pl. Opp., at 4. Actually, in response to Plaintiffs' allegation that Haddad is Defendant's agent, pl. opp. at 5, Defendant contended that Plaintiffs has not pled any facts to show that Haddad's alleged statement should be attributable to Defendant. Therefore, Plaintiffs' allegation that Haddad is Defendant's agent is directly from the pleading and Plaintiffs have not pled any additional facts to support this baseless conclusion. Plaintiffs now argue that their claim for relief is based on "direct pressure" exerted on Space Alliance but plead no additional facts to support the allegation of direct pressure except for Space Alliance's alleged statements about "customer issues." Plaintiffs plead no facts to support that allegation either. In other words, if Plaintiffs' claims are not based solely on Haddad's statements, as Defendant contends they are, then Plaintiffs' complaint is nothing more than legal conclusions with no factual support. Defendant's motion is entirely based on facts in the complaint and it should be granted.

Secondly, although Plaintiffs argue that their claim is based on "direct pressure" from Defendant and not Haddad's statement, they profer arguments for why Haddad's alleged statement should be attributable to Defendant. Plaintiffs argue that an "agency labor adviser" is

3

"responsible for advising contracting agency officials on federal contract labor matters." Pl. Opp., at 6 (citing 48 C.F.R. 22.10). One of the statements allegedly made by Haddad and sought to be attributed to Defendant is that Defendant will not reimburse any wage increases incurred by Space Alliance. It is patently untenable to seek to attribute this alleged statement to Defendant because, as labor representatives since 1983, Plaintiff should know that Space Alliance is entitled to seek reimbursements under the Contract Disputes Act, 41 U.S.C. 601 *et seq.*, and that a claim could be filed with the Space Contracting Officer pursuant to 48 C.F.R. §33.206.[2]

---

[2]     48 C.F.R. 33.211  Contracting officer's decision

   (a) When a claim by or against a contractor cannot be satisfied or settled by mutual agreement and a decision on the claim is necessary, the contracting officer shall--
   (1) Review the facts pertinent to the claim;
   (2) Secure assistance from legal and other advisors;
   (3) Coordinate with the contract administration office or contracting office, as appropriate; and
   (4) Prepare a written decision that shall include a--
   (i) Description of the claim or dispute;
   (ii) Reference to the pertinent contract terms;
   (iii) Statement of the factual areas of agreement and disagreement;
   (iv) Statement of the contracting officer's decision, with supporting rationale;
   (v) Paragraph substantially as follows:

``This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision";

 and
   (vi) Demand for payment prepared in accordance with 32.610(b) in all cases where the decision results in a finding that the contractor is indebted to the Government.

Rather than file this dubious action, Plaintiffs should have looked to 48 C.F.R. §33.206 for relief. As set forth above, this provision establishes Plaintiffs' avenue for relief if indeed they believed Haddad's statements. The regulation sets forth the Space Contracting Officer responsibilities and, after twenty-five years as labor representative, Plaintiffs should know this to be their exclusive relief. The regulation sets forth the contracting officer's responsibilities and even requires that records be created from which judicial review pursuant to the Administrative Procedure Act would be proper. Instead, Plaintiffs have pled no facts to establish that any due diligence was conducted before this complaint was filed. Rather, Plaintiffs suggest that Defendant engaged in illegal behavior but pleads no supporting facts. The court should not reward this type of unsupported filing by permitting this action to proceed beyond this pleading stage.

Thirdly, although they invoke 5 U.S.C. §702 as a jurisdictional basis, Plaintiffs claim that no final agency action is needed for "non-statutory review." Pl. Opp., at 7. Although this is a valid argument under the Circuit precedent Plaintiffs cite, *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006), they cite no precedent for their proposition which is that the alleged oral statements of an employee with no contracting authority can constitute final agency action. Despite the claims, *Trudeau* does not support Plaintiffs' contention.

Even if some alleged agency action could be inferred from the complaint, it is not ultra vires because no alleged activity exceeds Defendant's legal authority to act. Plaintiffs do not allege that Defendant lacks the authority to allocate its budget or make decisions on contract claims for allowable costs. To the extent that Mr. Haddad was opining on contract labor costs' allowability, no "ultra vires" act was being committed, because Defendant clearly has legal

authority to conduct contract activity. To the extent that Plaintiffs allege that Haddad was not opining on cost allowability, but was in fact being "reflective" on an illegal policy, it is implausible to suggest that Defendant has such an illegal policy based solely on the circumstances alleged in the complaint, which Plaintiffs have left as a total mystery.

Nor does Plaintiffs' mention of the SCA apply in this action. The SCA is a labor standards statute for service contracts that "regulates the contractual relationship between companies that provide services to the United States and their employees." A *to Z Maintenance Corp. v. Dole*, 710 F. Supp. 853 (D.D.C. 1989). It provides that contracts must contain, inter alia, provisions specifying the minimum wage and fringe benefits to be paid to various classes of service employees by contractors. 41 U.S.C. § 351(a)(1) and (2). Under the Act, the Secretary of Labor determines the appropriate minimum wage and fringe benefit for employees based upon the prevailing rate for such employees in the locality. 41 U.S.C. § 351(a). The Act also provides that, after a hearing, the Secretary of Labor may determine that the collectively bargained wage and fringe benefits in a particular service contract are substantially at variance with the prevailing wage and fringe benefits in the locality or are not the result of arms length negotiations. See 41 U.S.C. § 353(c). In that event, the Secretary shall order that the wages and fringe benefits in the service contract at issue be changed to conform with the rates in the locality, as determined by the Secretary. 29 C.F.R. § 4.1b(a). *Serv Empl. Int'l Union v. General Servs. Admin.*, 830 F. Supp. 5, 7 (D.D.C. 1993). Contrary to Plaintiff's contention, the SCA does not impose any obligation to refrain from interference in labor negotiations. That provision is contained in another separate provision dealing with Federal Acquisition Regulations. 48 C.F.R. 22.101-

6

1(b)(1). That regulatory provision does not confer a private right of action upon Plaintiffs.[3]

Finally, Plaintiffs have not alleged an injury within the SCA's zone of interest. Although Plaintiffs cite a few cases to establish that courts have held that unions had standing in some cases to bring actions under the SCA, none of the cases deal with any federal agency role or conduct in relation to negotiations of an incumbent contractor's bargaining agreement. The SCA does require payment of minimum wages to service employees on federal service contracts. Accordingly, Plaintiffs reliance on *IAM v. Hodgson*, 515 F.2d 373, 377 (D.C. Cir. 1975) as precedent for standing in this case is misplaced. In *Hodgson*, the Union contended that the contractor paid less than the rate prevailing in the locality, a claim that interests enumerated in the Act have been encroached. On that basis only, the court concluded the Union had standing. No such claim has been made by plaintiffs in this case. *Hodgson* was grounded in the fact that the SCA requires the payment of minimum wages, and the allegation was that such requirement was being violated. It said nothing of collective bargaining negotiations. Here, Plaintiff fails to specify any claim that interests enumerated in the Act have been encroached. The SCA simply does not impose any obligation on Defendant, and Plaintiffs fail to allege any act or omission which violates any SCA requirement. Similarly, Plaintiffs' reliance on *Serv Empl Int'l Union v. Gen. Servs. Admin.*, 830 F. Supp. 5, 7 (D.D.C. 1993) is misplaced.

---

[3] Plaintiffs argue that 48 C.F.R. § 101-1(b) "falls within the part of the Federal Acquisition Regulations ("FAR") that are intended to implement the SCA." This statement is largely misleading. Plaintiffs obviously fail to point out that within "Part 22," SCA implementation is found only in "Subpart 22.10 -- Service Contract Act of 1965, as Amended." . 48 C.F.R § 22.1000 -- Scope of Subpart. This subpart prescribes policies and procedures implementing the provisions of the Service Contract Act of 1965, as amended (41 U.S.C. 351, et seq.), the applicable provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201, et seq.), and related Secretary of Labor regulations and instructions (29 C.F.R Parts 4, 6, 8, and 1925).

Plaintiffs' argument that they have alleged sufficient economic injury also fails. The factual allegations fail to relate any alleged injury to any conduct attributable to Defendant because Defendant has done nothing. Even if taken as true, as the law requires, Haddad's alleged statement cannot contribute to any injury caused by Defendant's violation of the SCA, because the statements, relate to a single employee's offhand rumination on what the agency might do in the future on contract and budget matters, and the alleged communication was only to Plaintiffs. Even if Mr. Haddad thought that the agency in the future might attempt to disallow certain contract labor costs, Plaintiffs allege nothing to form a basis to infer that he was referring to anything other than his own speculation about contract decisions to be made by SPOC contracting officials at some future time. Nothing about Defendant's acts or omissions relating to any negotiations may be reasonably inferred from Haddad's alleged statement.

Plaintiffs' allegation about Space Alliance comments regarding "customer issues" also rings hallow. Plaintiffs fail to allege that they ever asked Space Alliance what was meant by "customer issues." Because Plaintiffs fail to allege that they asked Space Alliance what customer issues meant, they suggest that the court should infer that "customer issues" implies illegal conduct on Defendant's part. Because no illegal or improper act or omission by Defendant has been alleged which could have affected Space Alliance's negotiation activity, there is absolutely no inference that any injury is fairly traceable to Defendant's act or omission. Plaintiffs fail to allege that Space Alliance in any way indicated to anyone that it received any improper communications whatsoever from Defendant.

Plaintiffs' supposed basis to argue redressability is "the injury the IAM alleged—NASA interference in the IAM's negotiations with Space Alliance—would be plainly addressed by the

relief IAM is seeking: a declaration that such interference is unlawful and an injunction prohibiting future interference." (Plaintiffs' Brief p. 11). Plaintiffs claim they want a declaration of this court and an injunction, but they have failed to allege any act, omission, or other conduct this court should enjoin. An injunction ordering NASA to "remain impartial concerning any dispute between labor and contractor management" would be of no use, as it would merely regurgitate the Federal Acquisitions Regulation and set no standards as to what conduct would be "impartial" and what conduct would not.

Plaintiffs assert that their claims are not rendered moot or speculative by the resolution of their labor dispute, because they have alleged "a pattern and practice by Defendant of interfering in its contractors' labor relations in violation of the SCA." This argument fails, because there are no alleged acts or omissions attributable to NASA that would constitute such a pattern and practice. Moreover, even if such an order were issued, it would be worthless because Plaintiffs have already reached an agreement with Space Alliance. To the extent that Plaintiffs seek a prospective order, such would be speculative and unwarranted.

## CONCLUSION

Upon the foregoing, the Defendant respectfully requests that Plaintiffs' complaint be dismissed with prejudice.

Dated: January 7, 2008              Respectfully submitted,

   /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

          /s/
KENNETH ADEBONOJO
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7157
Fax: (202) 514-8780
kenneth.adebonojo@usdoj.gov

**Of Counsel:**

Donald H. Schiller, Esq.
Assistant Chief Counsel
NASA Kennedy Space Center