## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, DISTRICT LODGE 166, AFL-
CIO, *et al.*,

      Plaintiffs,

      v.

MICHAEL GRIFFIN, Administrator of
National Aeronautics and Space
Administration,

      Defendant.

Civil Action No. 07-1459 (CKK)

### MEMORANDUM OPINION
(December 22, 2008)

     This case arises out of a labor dispute.  Plaintiffs International Association of Machinists

and Aerospace Workers, District Lodge 166 and Local Lodge 2061, AFL-CIO (collectively

"Plaintiffs"), are the collective bargaining representatives for a group of workers who are

employed by non-party United Space Alliance, LLC ("Space Alliance").  Pursuant to a service

contract, Space Alliance provides employees to work at the John F. Kennedy Space Center for

the National Aeronautics and Space Administration ("NASA").[1]

     Since 1983, the relationship between Plaintiffs and Space Alliance has been governed by

a series of collective bargaining agreements, one of which expired on June 1, 2007.  At that time,

Plaintiffs hoped to negotiate a new collective bargaining agreement that would increase hourly

wages to match the rates paid to workers employed by another non-party company called United

---

[1] The Kennedy Space Center, located in Brevard County, Florida, is the home of NASA's
space shuttle fleet and the location of NASA's space shuttle launches.

Launch Alliance, LLC ("Launch Alliance").  The negotiations between Plaintiffs and Space

Alliance failed to yield such an agreement and the employees represented by Plaintiffs went on

strike.

Plaintiffs blame NASA for their failed negotiations and have brought suit against Michael

Griffin, in his official capacity as Administrator of National Aeronautics and Space

Administration ("NASA").  Plaintiffs' Complaint alleges that an unspecified person working for

NASA told an unspecified person working for Space Alliance that NASA would refuse to

reimburse increased labor costs if Space Alliance agreed to higher wages in a new collective

bargaining agreement.  Plaintiffs characterize this statement as a threat, and Plaintiffs' Complaint

seeks certain declaratory relief and an injunction against any future "threats."

NASA has filed a [12] Motion to Dismiss Plaintiffs' Complaint for failure to state a

claim, which Plaintiffs have opposed.  NASA has also filed a Reply.  After thoroughly reviewing

the parties' submissions, applicable case law, statutory and regulatory authority, and the record of

the case as a whole, the Court shall GRANT Defendant's [12] Motion to Dismiss, for the reasons

that follow.

## I.  BACKGROUND

Space Alliance has a service contract with NASA to provide mechanical and technical

personnel for NASA's manned space launches at the Kennedy Space Center.[2]  Compl. ¶ 15.

Plaintiffs are the exclusive bargaining representatives for these employees.  *Id.* ¶ 17.  Since 1983,

Plaintiffs and Space Alliance have negotiated a series of collective bargaining agreements with

---

[2]  In discussing these facts, the Court accepts as true all well-pleaded factual allegations in Plaintiffs' Complaint, as it must on a Motion to Dismiss.  *Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002).

respect to wages and other conditions of employment.  *Id.*  In mid-2007, Plaintiffs and Space

Alliance commenced negotiations for a new agreement, and Plaintiffs hoped the new agreement

would include increased hourly wages.  *Id.* ¶¶ 18, 19.

      After failing to reach an agreement, Plaintiffs initiated a strike against Space Alliance

beginning June 14, 2007.[3]  *Id.* ¶ 20.  At the heart of Plaintiffs' Complaint is that, during this

period, NASA "exerted direct pressure on Space Alliance that [] distorted the collective

bargaining process between [Plaintiffs] and Space Alliance."  *Id.* ¶ 21.  In particular, Plaintiffs

allege that "NASA has made statements that have exerted and continue to exert coercive pressure

on Space Alliance to insist on wage rates below the level at which it would be willing to settle

for in the absence of such coercive pressure."  *Id.*

      Plaintiffs' Complaint describes a single instance of such "statements."  On May 14, 2007,

Samuel Haddad, NASA's Regional Labor Advisor at the Kennedy Space Center, met with

Johnny Walker, the Directing Business Representative of District 166.  *Id.* ¶¶ 22-23.  Plaintiffs

allege that Haddad was "[a]cting as an agent of [D]efendant and representative of the agency"

when he stated that "NASA would not increase [the amount of money paid to Space Alliance for

services rendered] under any circumstances, [and] that NASA would not reimburse Space

Alliance for any increase in employees' wages or benefits that the employer may negotiate with

[P]laintiffs . . . ."  *Id.* ¶ 23.  According to Plaintiffs, this "threat" was inconsistent with NASA's

obligation to remain neutral in the labor dispute between Space Alliance and Plaintiffs.  *Id.* ¶ 24.

Plaintiffs' submissions to the Court fail to explain how this "threat" could have exerted any

---

[3] The parties ultimately reached a new collective bargaining agreement and the strike
ended on November 5, 2007.  Def.'s Mot. at 1 n.1; Pls.' Opp'n at 3 n.1.

pressure on Space Alliance when it was made to a representative of Plaintiffs and *not* Space Alliance.

In any event, Plaintiffs further allege that Haddad's threat reflected NASA's "position," and that throughout the collective bargaining agreement negotiations, Space Alliance made references to "customer issues," which Plaintiffs allege to have been the pressure exerted by NASA. *Id.* ¶ 25. On information and belief, Plaintiffs also assert that NASA has developed "a recurring pattern and practice" to obstruct "efforts of service contractors to obtain lawful reimbursement or allowances for labor expenses." *Id.* ¶ 26.

As a result of the foregoing, Plaintiffs seek (1) a declaration that NASA has violated the McNamara-O'Hara Service Contract Act of 1965, 41 U.S.C. §§ 351-38, and the implementing regulations thereto, (2) a declaration that NASA cannot seek to obtain a wage variance pursuant to 41 U.S.C. § 353(c) (apparently because Plaintiffs fear that such a proceeding would result in lower wages), and (3) an injunction that enjoins NASA from threatening Space Alliance during future collective bargaining agreement negotiations. *Id.* ¶ 31 & Compl. at 11.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.

4

*In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

## III. DISCUSSION

Defendant's Motion to Dismiss argues that Plaintiffs' claims are not judicially reviewable and that Plaintiffs lack standing to bring this suit.  *See* Def.'s Mot. at 5-9.  The Court does not reach the issue of standing because the dispositive threshold issue in this case is whether Plaintiffs' Complaint sets forth an appropriate basis for judicial review.  Because the Court finds that Plaintiffs' Complaint fails to do so, the Court shall grant Defendant's Motion to Dismiss.[4]

Plaintiffs argue that NASA's conduct violated federal regulations adopted to implement and further the McNamara-O'Hara Service Contract Act of 1965, 41 U.S.C. §§ 351-38 (the "SCA"), an act establishing labor standards for contracts providing services to the federal

---

[4] The Court recognizes that standing is also a threshold issue.  *See Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 453 (D.C. Cir. 2004) ("Article III standing must be resolved as a threshold matter").  In this case, however, whether Plaintiffs have standing depends on whether they have set forth an appropriate basis for judicial review.  In the absence of such a basis, the Court does not opine on whether Plaintiffs would otherwise have standing.

government.[5]  Compl. ¶ 1; Pls.' Opp'n at 15.  None of the SCA's regulations allow Plaintiffs to

seek judicial review of NASA's conduct in this case, and Plaintiffs do not suggest otherwise.  As

the Eleventh Circuit explained in a previous case involving one of the Plaintiffs,

> the SCA does not confer on the plaintiff a private right of action for its
> enforcement.  It is obvious that plaintiff seeks relief by way of mandamus from
> the federal defendants solely as means of obtaining back wages . . . We refuse to
> blind ourselves to the inequity of granting plaintiff relief which is not an end in
> itself but is merely a means to an end which plaintiff could not obtain except by
> this end run.

*District Lodge No. 166 v. TWA Servs., Inc.*, 731 F.2d 711, 717 (11th Cir. 1984).  *Accord*

*Danielsen v. Dole*, 746 F. Supp. 160, 166 (D.D.C. 1990).

Despite the lack of a private right of action under the SCA, Plaintiffs seek to have this

Court exercise "non-statutory review," Compl. ¶ 9; Pls.' Opp'n at 7, a narrow doctrine allowing

plaintiffs to bring claims under the Court's federal question jurisdiction when an agency acts

*ultra vires*.  *See Aid Assoc. for Lutherans v. United States Postal Servs.*, 321 F.3d 1166, 1173

(D.C. Cir. 2003) ("the case law in this circuit is clear that judicial review is available when an

agency acts *ultra vires*"); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996)

("[i]f a plaintiff is unable to bring his case predicated on either a specific or general statutory

review provision, he may still be able to institute a non-statutory review action").  This review

doctrine is often called "*Leedom* jurisdiction" or the "*Kyne* exception" after the leading case

approving its application, *Leedom v. Kyne*, 358 U.S. 184 (1958).  *See, e.g.*, *Nat'l Air Traffic*

*Controllers Assoc. AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006)

---

[5] Plaintiffs' Complaint and Opposition also contain oblique references to violations of the National Labor Relations Act, *see, e.g.*, Compl. ¶ 28; Pls.' Opp'n at 7, but Plaintiffs do not reference any particular provision or explain how Defendant's conduct violated that statute.

(referring to "so-called *Leedom* jurisdiction"); *United States Dep't of Justice v. Fed. Labor Relations Auth.*, 981 F.2d 1339, 1343 (D.C. Cir. 1993) (referring to the "*Kyne* exception").[6]

Although "judicial review is favored" where an agency acts beyond its authority, *Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988), the non-statutory review doctrine is intended to be "extremely limited [in] scope." *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988). In fact, the D.C. Circuit has described the doctrine as "extraordinary," *Nat'l Air Traffic Controllers Ass'n AFL-CIO*, 437 F.3d at 1263, and has cabined the doctrine to agency errors "so extreme that one may view [the errors] as jurisdictional or nearly so." *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) (en banc).

The showing a plaintiff must make to obtain non-statutory review is "nearly insurmountable." *United States Dep't of Justice*, 981 F.2d at 1343. Plaintiffs must first show that the denial of judicial review would wholly deprive them of a meaningful and adequate means of vindicating their statutory rights. *Bd. of Governors of the Fed. Reserve Sys. of the United States v. Mcorp Fin., Inc.*, 502 U.S. 32, 43 (1991). The Court finds that Plaintiffs cannot make this showing in this case.

Plaintiffs allege that their employees are paid less than they are entitled to receive (or

_____

[6] Defendant initially misread Plaintiffs' Complaint as asserting a claim under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.* ("APA"), and argued that Plaintiffs failed to identify any final agency action. *See* Def.'s Mot. at 4-6. In response, Plaintiffs accurately explained that they were asserting a non-statutory review action, not an action under the APA, and that they are not required to show any final agency action. *See* Pls.' Opp'n at 7 (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 190 (D.C. Cir. 2006)). Although Plaintiffs do rely on Section 702 of the APA as a waiver of Defendant's sovereign immunity in this case, the waiver in Section 702 "applies to any suit whether under the APA or not." *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). Accordingly, Defendant's APA-related arguments lack merit.

would receive) in the absence of interference by NASA.  *See* Compl. ¶¶ 3-5.  Plaintiffs'

Complaint specifically references the workers at the Kennedy Space Center who are employed by

Launch Alliance, and allege that Launch Alliance's employees are paid "approximately three

dollars per hour more than their counterparts at Space Alliance for performing essentially the

same work."  *Id.* ¶¶ 4, 19.  Thus, according to the Complaint, the Court should enter declaratory

and injunctive relief to prevent further interference from NASA, as well as to prevent NASA

from seeking a wage variance to reduce the employees' hourly rates.  *Id.* ¶ 31 & Compl. at 11.

   If Plaintiffs believe that the employees they represent are paid less than the prevailing

wage rates in the locality, they need not pursue a non-statutory review action.  Instead, Plaintiffs

may obtain relief by pursuing their administrative remedies under the SCA.  In particular, the

SCA authorizes the Secretary of the Department of Labor to hold hearings to determine whether

the wages for employees operating under a collective bargaining agreement are substantially at

variance with those prevailing for similar services in the locality.[7]  41 U.S.C. § 353(c); 29 C.F.R.

§ 4.10(b).  Employees or other interested entities (such as Plaintiffs) may request such a hearing

by sending information to the Administrator of the Wage and Hour Division, Employment

Standards Administration, of the Department of Labor (the "Administrator").[8]  29 C.F.R. §

---

   [7] Such hearings are permissible when (1) there has been a prior contract involving substantially the same services and (2) the wages for the employees working on the earlier contract were set pursuant to a CBA.  41 U.S.C. § 353(c)

   [8] Plaintiffs acknowledge that the SCA's regulatory scheme is the exclusive mechanism to obtain a wage variance, but imply that the procedure is only available to an agency.  *See* Compl. ¶ 5; Pls.' Opp'n at 15.  That is not so.  *See United Gov't Security Officers of Amer., Local No. 52 v. Chertoff*, No. 07-173, 2008 U.S. Dist. LEXIS 95476 at *5 (D.D.C. Nov. 24, 2008) (Kollar-Kotelly, J.) (explaining that wage variance hearings may be initiated by employees or other interested parties).

4.10(b).  If the Administrator determines that a substantial variance may exist, the matter may be

referred to an Administrative Law Judge, who renders a decision as to whether there is, in fact, a

substantial variance:

> [the ALJ] conduct[s] such a fact finding hearing as may be necessary to render a
> decision solely on the issue of whether the wages and/or fringe benefits contained
> in the collective bargaining agreement which was the basis for the wage
> determination at issue are substantially at variance with those which prevail for
> services of a character similar in the locality.

*Id.* § 4.10(c).  If an ALJ determines, as a result of a hearing, that some or all of the wages

specified in a collective bargaining agreement are substantially at variance with the wages

prevailing in the locality, the Department of Labor must issue a new wage determination, and the

contracting agency (*i.e.*, NASA) must amend its service contract to specify the new wage rates

for the affected employees.  29 C.F.R. § 4.163.

Assuming Plaintiffs successfully pursue their administrative remedies and obtain a new

wage determination, NASA would be legally obligated to incorporate the new wage

determination and reimburse Space Alliance for the higher wages.  *See United Gov't Security*

*Officers of Amer., Local No. 52 v. Chertoff*, No. 07-173, 2008 U.S. Dist. LEXIS 95476 at *6-*7

(D.D.C. Nov. 24, 2008) (Kollar-Kotelly, J.).  Accordingly, quite apart from the reasons why

Plaintiffs believe the employees they represent receive wages that are lower than Launch

Alliance's employees, Plaintiffs cannot obtain non-statutory review where, as here, they may

otherwise obtain relief through administrative channels.[9]  *See, e.g., Nat'l Air Traffic Controllers*

---

[9] There may be other avenues for relief as well.  NASA argues that Plaintiffs may pursue
relief under the Contracts Dispute Act, 41 U.S.C. § 601 *et seq.*, and its implementing regulation
at 48 C.F.R. § 33.206.  The Court declines to rely on this statute and regulation, however,
because Defendant identified it for the first time in Reply, and Plaintiffs consequently did not
have an opportunity to respond to it.

*Ass'n,* 437 F.3d at 1265 (holding that the plaintiffs had not been "wholly deprived of a meaningful and adequate means of vindicating their statutory rights" because "[i]f their claims have merit, the [plaintiffs] can vindicate their statutory rights and gain appropriate redress before the [Federal Labor Relations Authority]").

Non-statutory review is unavailable in this case for a second reason.  Plaintiffs seeking non-statutory review must show that the agency has acted in excess of its delegated powers and contrary to a *specific* prohibition that is *clear and mandatory*.  *Id.* at 1263.  Under this standard, a plaintiff must raise more than a "garden variety" factual or legal error, but must instead identify an agency error "so extreme that one may view it as jurisdictional or nearly so." *Griffith*, 842 F.2d at 493.  Plaintiffs' Complaint fails to establish such an extreme violation.

Plaintiffs identify two statutes and two regulations that NASA has allegedly violated: (1) the SCA, (2) the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*, (3) 48 C.F.R. § 22.1013, and (4) 48 C.F.R. §22.101-1(b)(1).  *See* Pls.' Opp'n at 7, 15.  Plaintiffs' reliance on the first two statutes must be summarily rejected because Plaintiffs do not identify a single provision of the SCA or NLRA that they believe NASA has violated.[10]  Plaintiffs' reliance on the third regulation, 48 C.F.R. § 22.1013, must be rejected for the same reason.  That regulation simply allows agencies to seek review of wage determinations that are inconsistent with the wages that prevail in the locality and contains no express prohibition relating to the challenged conduct in this case.[11]  The D.C. Circuit has repeatedly held that non-statutory review

---

[10] Plaintiffs argue only that the SCA "implicitly requires" NASA to "remain neutral" in collective bargaining agreement negotiations.  Pls.' Opp'n at 15.

[11] Plaintiffs argue only that the procedures specified in this regulation "would be unnecessary if agencies were free to set wages for service contractors prior to the formation of a

is inappropriate where a plaintiff fails to identify a "clear and mandatory" obligation in a specific statute or regulation. *See, e.g.*, *Pennsylvania Mun. Auth. Ass'n v. Johnson*, 2005 U.S. App. LEXIS 10455 at *5 (D.C. Cir. Jun. 3, 2005) ("the appellants argue only that the EPA regions are acting in excess of authority delegated to them by the EPA Administrator.  Because they do not identify any statutory provision that the agency violated, they cannot overcome the 'nearly insurmountable limitations on *Kyne* jurisdiction.'") (quoting *United States Dep't of Justice*, 981 F.2d at 1343); *Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 283 F.3d 339, 344 (D.C. Cir. 2002) (holding that the "clear violation" must violate "an unambiguous statutory provision," and because plaintiff merely repeated its disagreement with the defendant's ruling, the plaintiffs merely asserted that the "agency may have made an error of fact or law" and not that the "agency must have acted without statutory authority").[12]

Unlike the other provisions cited above, the fourth regulation cited by Plaintiffs, 48 C.F.R. § 22.101-1(b)(1), at least references agency impartiality:

> [a]gencies shall remain impartial concerning any dispute between labor and contractor management and not undertake the conciliation, mediation, or arbitration of a labor dispute.  To the extent practicable, agencies should ensure that the parties to the dispute use all available methods for resolving the dispute, including the services of the National Labor Relations Board, Federal Mediation and Conciliation Service, the National Mediation Board and other appropriate Federal, State, local, or private agencies.

*Id.* § 22.101-1(b)(1).  This provision does not define impartiality and provides no further

---

collective bargaining agreement."  Pls.' Opp'n at 15-16.

[12] The Court notes that Plaintiffs' Complaint referenced another regulation, 48 C.F.R. § 52.222-43, which Plaintiffs incorrectly cited as "48 C.F.R. § 52.22-43."  *See* Compl. ¶ 28.  That regulation is irrelevant to the instant dispute and Plaintiffs do not raise it in their Opposition to NASA's Motion to Dismiss.

guidance as to what is required of agencies.  The provisions surrounding this one clarify that

impartiality does *not* prohibit all contact between an agency and the parties to a labor dispute.

On the contrary, the regulation specifically directs agencies to "take other actions concerning

labor relations problems," *id.* § 22.101-1(d), including:

> (2) Furnish[ing] to the parties to a dispute factual information pertinent to
> the dispute's potential or actual adverse impact on [the agency's acquisition
> programs] . . .

> (3) Seek[ing] a voluntary agreement between management and labor,
> notwithstanding the continuance of the dispute, to permit uninterrupted
> acquisition of supplies and services . . .

*Id.* § 22.101-1(d)(2), (3).  In context, impartiality may simply require agencies to refrain from

undertaking, as stated in the regulation, the "conciliation, mediation, or arbitration of a labor

dispute."  It could also mean, as Plaintiffs contend, that agencies must refrain from "threatening"

any party to a labor dispute.

Without explicit guidance as to the meaning of "impartial" in this regulation, the Court

cannot find that NASA has violated a "clear and mandatory" obligation.  The D.C. Circuit has

repeatedly held that non-statutory review must be based on a statute or regulation that is subject

to only one reasonable interpretation.  For example, in *National Air Traffic Controllers*

*Association AFL-CIO v. Federal Service Impasses Panel*, the plaintiffs argued that the

defendants had violated their mandatory duty to assert jurisdiction over the parties' bargaining

impasses, where the relevant statute stated that the defendants "shall promptly investigate any

impasse presented to it[,] . . . shall consider the impasse and shall either - (i) recommend to the

parties procedures for the resolution of the impasse; or (ii) assist the parties in resolving the

impasse."  437 F.3d 1256, 1264 (D.C. Cir. 2006) (quoting 5 U.S.C. § 7119(c)(5)(A) (internal

quotation marks omitted)).  Despite this clear language, the defendants declined to assist with resolution of the plaintiff's bargaining impasses because it believed its jurisdiction to be "unclear."  The D.C. Circuit noted that the defendants may have acted in violation of the statute cited by the plaintiffs, but because both sides raised "compelling arguments," the Court held that it could not conclude that the defendants violated "a specific and unambiguous statutory directive."  *Id.* at 1264 (quoting *United Food & Commercial Workers, Local 400 v. Nat'l Labor Relations Bd.*, 694 F.2d 276, 278 (D.C. Cir. 1982) (per curiam)).  *See also Griffith*, 842 F.2d at 489-90 (finding no *Kyne* jurisdiction where, at most, the defendant may have "failed to capture some marginal nuance of the Back Pay Act"); *Physicians Nat'l House Staff Ass'n.*, 642 F.2d at 496 & n. 5 (rejecting application of *Kyne* jurisdiction and holding that, in response to the plaintiffs' argument that the NLRB misinterpreted the term "employee," that the statute "does not define the term employee" and that "[i]t is not necessary in this case to make a completely definitive limitation around the term 'employee'").

In this case, even though Section 22.101-1(d) refers to impartiality, it does not expressly prohibit the specific types of acts alleged to have been committed by NASA in this case.  In fact, Plaintiffs' argument relies entirely on its own *interpretation* of the regulation, rather than any guidance that can be quoted from its actual text. Based on the legal authorities described above that require a violation of an unambiguous statute or regulation, the Court finds that Plaintiffs have not set forth a sufficient showing that NASA violated a clear and mandatory obligation.

Finally, even if the Court were to find that this regulation contained an unambiguous and mandatory obligation that NASA was capable of violating, the Court would still find that Plaintiffs fail to allege a specific *ultra vires* act from which to find such a violation.  Plaintiffs'

Complaint appears to assert three potential *ultra vires* acts.  First, Plaintiffs allege that Haddad, NASA's Regional Labor Advisor, told Johnny Walker, the Directing Business Representative of District 166 that "NASA would not increase [the amount of money paid to Space Alliance for services rendered] under any circumstances, [and] that NASA would not reimburse Space Alliance for any increase in employees' wages or benefits that the employer may negotiate with [P]laintiffs . . . ."  Compl. ¶ 23.[13]  Section 22.101-1(d), however, does not expressly prohibit an agency's representative from meeting with the representative of a contracting company and opining on future actions that the agency might take.  To give rise to non-statutory review, the prohibition must be plain on its face.  *Lepre v. DOL*, 275 F.3d 59, 74 (D.C. Cir. 2001) (rejecting non-statutory review where the plaintiff alleged a "'garden-variety' error . . . rather than [a] claim of a statutory violation that is plain on its face").[14]  Second, Plaintiffs allege that, throughout their collective bargaining agreement negotiations, Space Alliance referenced "customer issues," which Plaintiffs allege to have been pressure exerted by NASA.  Compl. ¶ 25.  Again, Plaintiffs' interpretation of this phrase does not surmount the necessary showing that NASA committed a clear *ultra vires* act.  Third, Plaintiffs' allege that "[o]n information and belief," NASA has developed "a recurring pattern and practice" of obstructing labor disputes.  *Id.* ¶ 26.  The Court

---

[13] NASA's Motion to Dismiss and Reply repeatedly argue that Haddad's statement is not fairly attributable to NASA.  *See, e.g.*, Def.'s Mot. at 5; Def.'s Reply at 4.  On a Motion to Dismiss, however, the Court is bound to accept the allegation in Plaintiffs' Complaint that Haddad was speaking as NASA's agent.  *See* Compl. ¶ 23.

[14] The Court also notes that, as a factual matter, this allegation does not support Plaintiffs' argument that NASA "exerted pressure on Space Alliance to insist on a lower wage level that in otherwise would have agreed to with [Plaintiffs]."  Pls.' Opp'n at 2.  Without additional facts that have not been plead, it is illogical to suggest that NASA exerted pressure on Space Alliance by making a statement to Plaintiffs (instead of Space Alliance).

agrees with Defendant that this specious allegation is unsupported by *any* facts in Plaintiffs' Complaint that make a claim based on this allegation "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). As the D.C. Circuit has instructed, a Complaint must include at least "some information" supporting a claim. *Aktieselskabet AF 21 v. Fame Jeans*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008). Here, Plaintiffs' allegation does not even allude to the factual information that would make this allegation rise "above the speculative level." *Twombly*, 127 S. Ct. at 1965. The scarcity of factual support is especially problematic where, as here, Plaintiffs seek non-statutory review, because the Court cannot find, based on this sole conclusory allegation, that NASA implemented a "policy and practice" that represents such an extreme error as to warrant non-statutory review. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949) ("[a] claim of error in the exercise of [an agency's] power is [] not sufficient"); *Physicians Nat'l House Staff*, 642 F.2d at 496 ("an error of fact or law is insufficient; the [agency] must have acted without statutory authority").[15]

For all of these reasons, Plaintiffs' Complaint is not remotely close to one that properly states a claim for non-statutory review. Because the Complaint pleads no other basis for Plaintiffs' claims, the Court must dismiss the Complaint at this stage of the litigation.

---

[15] In addition, if this sole allegation were sufficient to state a claim for relief, then every complaint alleging a pattern and practice that allegedly violated a regulation associated with the SCA would give rise to a cause of action, even though it is undisputed that the SCA does not afford plaintiffs with private causes of action. That is an illogical result. *Cf. Griffith*, 842 F.2d at 494 ("[a]ccepting such a claim would turn *every* error of law into a basis for review, effectively repealing hundreds of finality provisions").

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's [12] Motion to

Dismiss Plaintiffs' Complaint.  An appropriate Order accompanies this Memorandum Opinion.


Date:  December 22, 2008

_/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge
